**STATE ex rel. Nancy NIESS et al., Relators-Respondents,**

v.

**Dr. J. Merrell JUNKINS et al., Respondents-Appellants.**

No. 60652.

Supreme Court of Missouri, En Banc.

Nov. 6, 1978.

Jon Dermott, Joplin, for respondents-appellants.

Thomas D. Carver, Carver & Sotta, Joplin, David T. Greis, Kansas City, for relators-respondents.

FINCH, Judge.

Individually named teachers of the Joplin School District and the Joplin Community Teachers Association, an unincorporated association consisting of a majority of the teachers employed by the school district (hereinafter relators), filed an action in *mandamus* against members of the Joplin School Board (hereinafter respondents) to compel the board to pay additional salary alleged to be due teachers under the provisions of § 163.031(9).[1] The trial court ruled that the action was maintainable by relators as a class action, that mandamus was a proper remedy and that the writ should be granted. Respondents appealed to the Missouri Court of Appeals, Springfield District, which transferred the case to this court for opinion on the basis that the case involves construction of a revenue law of the state. We have jurisdiction. Mo.Const. art. V, § 3. We reverse.

*Was Suit Properly Allowed as a Class Action Under Rule 52.08?*

Relators' petition alleged that they would fairly and adequately protect the interests of the teachers' association, its members and all other teachers in the district. It also alleged that the class was so numerous that joinder was impractical, that the claims of the relators were typical of the claims of other teachers, and that there were questions of law and fact common to

1. All statutory references are to RSMo 1969 unless otherwise indicated.

all the teachers in the district. Respondents filed a pre-trial motion asking the court to determine whether the individual relators would adequately represent the claims of all teachers employed by the district. The trial court did not rule on that motion and made no pre-trial order concerning relators' request to bring the action as a class action. After trial the court found in Finding of Fact No. 3 that the teachers' association, of which individual relators were officers, comprised some 340 out of a total of approximately 450 teachers in the school system and would fairly and adequately represent the interests of all teachers in the district. In Conclusion of Law No. 1, the court found that relators could bring the action as representatives of their own unincorporated association and as representatives of all teachers in the school district. The court set out the four prerequisites to a class action recited in Rule 52.08(a), V.A.M.R.[2] and found and concluded that each of those prerequisites had been met.

Class actions are governed by Rule 52.08. In addition to the four prerequisites contained in 52.08(a), the presence of which the trial court found in Conclusion of Law No. 1, the rule requires in 52.08(b) that one of three additional prerequisites listed therein be found to exist. The trial court made no finding as to the presence or absence of any of these three prerequisites. In addition, Rule 52.08(c) provides in part as follows:

"(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

"(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (b) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel."

As previously noted, the trial court made no pre-trial order pursuant to Rule 52.08(c) and it did not at any time direct that notice be given to members of the class pursuant to Rule 52.08(c)(2).

In *Moore v. City of Pacific*, 534 S.W.2d 486 (Mo.App.1976), in discussing whether that action was maintainable as a class action under Rule 52.08 the court noted that there had been no pre-trial order finding that the prerequisites of Rule 52.08(c)(1) had been met and no notice had been issued to purported members of the class in accordance with Rule 52.08(c)(2). The court held that such a pre-trial order is a condition precedent to the maintenance of a class action under Rule 52.08 and that in the absence of such order and notice, the suit was not maintainable as a class action. The court permitted the case to proceed as a suit by the individual plaintiffs for the relief sought.

In this case, as previously noted, there was no pre-trial order with reference to maintenance of this suit as a class action. There was no finding at any time as to compliance with the requirements of Rule 52.08(b) and there was no notice given to members of the class in accordance with Rule 52.08(c)(2). Consequently, we conclude that this case was not maintainable as a class action and the trial court erred in holding that it was. However, the suit is maintainable by the individual relators on their own behalf and the suit is maintainable by them on behalf of the teachers' association pursuant to the provisions of Rule 52.10 which governs actions relating to unincorporated associations.

**2.** All references to rules are to V.A.M.R.

*Is Mandamus An Appropriate Remedy?*

Respondents assert that the judgment herein should be reversed for the reason that mandamus is not an appropriate remedy. Both respondents and relators cite numerous cases in support of their respective positions. We conclude that we need not review those cases and resolve this issue because assuming, but without deciding, that mandamus is appropriate, relators are not entitled to the relief granted by the trial court.

### Did the Joplin R–VIII School District Comply With § 163.031(9) for the 1974–75 School Year?

Section 163.031 provides that school districts which meet certain requirements shall be entitled to what is referred to as minimum guarantee funds under the state school foundation program. The section establishes a formula for determining the amount to which a qualifying district is entitled. Section 163.061 requires that not less than eighty percent of such sums must be deposited in the district's teachers' fund and the remainder in the incidental fund. This was done for the year 1974–75. The district received $2,947,672 in minimum guarantee funds; it deposited $2,358,138 thereof in its teachers' fund, and the rest in its incidental fund.

In June 1974, following negotiations, the school board set teachers' salaries for 1974–75. At that time preliminary figures indicated that $2,219,296 would be received under the minimum guarantee from the state. In September 1974, the school board received notice that it would receive an additional sum of $138,842 or a total of $2,358,138 minimum guarantee for the year. The board then adopted a final budget reflecting this additional amount of anticipated state aid but did not change the amounts to be paid to teachers. The teachers' association made a demand on the school board that this additional $138,842 be paid to

teachers in salary. It is their contention that the district is obligated to pay this additional sum to teachers pursuant to § 163.031(9), which provides:

"A school district shall spend for teachers' salaries each year at least eighty percent of the state school funds received under this section that year as provided by section 163.061 and as much of the revenue produced by local tax levies as was spent for teachers' salaries the previous year. In the event a district fails to comply with this provision, the amount by which the district fails to spend funds as provided herein shall be deducted from the district's apportionment for the following year, provided that the state board of education may exempt a school district from this provision if the state board of education determines that circumstances warrant such exemption."

The foregoing section required the Joplin district to spend for teachers' salaries in 1974–75 at least eighty percent of the amount received from the state under the minimum guarantee program. That amount was $2,358,138. It also required the district to expend at least $2,031,229.11 from local tax levy moneys, that being the amount spent from that source during the 1973–74 year.[3] These required sums total $4,389,367.11. It is undisputed that the district actually spent for teachers' salaries during the 1974–75 year the sum of $5,248,204.02.

Respondents contend that such expenditures fully satisfied the obligation imposed on the school district by § 163.031(9). In support of that contention, John W. Alberty, coordinator of school finances for the State Department of Elementary and Secondary Education, was called as a witness by respondents. The department annually tests financial reports from each school district to determine whether it has complied with § 163.031(9) and whether funds should be deducted for non-compliance according

---

**3.** Relators state in their brief that no question is raised as to the district's compliance with the "local effort" requirement of § 163.031(9). Their contention is limited to alleged non-com-

pliance with the requirement that eighty percent of the minimum guarantee funds be expended for teachers' salaries during the year.

to the terms of § 163.031(9). Mr. Alberty testified as to methods used by his department to test compliance and stated that assuming the correctness of the figures used on respondents' Exhibit 6, the district would be in compliance with that statute.[4] The district also called James E. Brown, a certified public accountant with the firm which audits the Joplin school district. He explained in detail the handling of teachers' funds by the district. Minimum guarantee funds are received from the state in installments paid in September, December, March and May of each year. Local tax levy funds are received in December and January. These, along with funds from other sources which are to be used for teachers' salaries, are all placed in the bank to the credit of the account for the teachers' fund pursuant to § 165.011. There are not separate accounts for teachers' funds received from the various sources. Brown testified that the proper method for testing compliance with § 163.031(9) contemplates the expenditure of the state funds first and local effort money last, with the remaining balance in the account carried over as the balance for the beginning of the next year. He testified that the district spent eighty percent of the minimum guarantee funds for teachers' salaries and was in compliance with § 163.031(9).

Relators, on the other hand, say that the $138,842 in unanticipated guarantee funds (not known of or contemplated when teachers' salaries were set in June) was not expended for teachers' salaries during 1974–75 but was used to increase the fund balance carried forward at the end of the 1974–75 year. They argue that compliance with § 163.031(9) requires a procedure whereby it is demonstrated that funds received from the state were in fact disbursed in payment of teachers' salaries. They insist that simply comparing sums actually spent for salaries with amounts of state funds the district is required to disburse for that purpose does not demonstrate compliance. Likewise, they argue, assuming that state money is spent first and local money last, as the district's accountant testified he does, that is not satisfactory proof of compliance.

Relators do not undertake to suggest what would be a proper method of accounting for state aid funds to make sure that eighty percent thereof is expended during the year for teachers' salaries. They do observe that the state funds could be placed in a separate account, with a monthly transfer therefrom to the teachers' fund. Such a plan would appear to conflict with the requirement in § 165.011.1 that funds from various sources, including minimum guarantee funds, be placed in the teachers' fund. They also made reference in cross-examining Mr. Alberty to the FIFO method of accounting (first in, first out) but they do not argue specifically therefor as do the teachers in *State ex rel. Herbert v. Downey*, 572 S.W.2d 473 (Mo. banc 1978), decided concurrently.

■ In our view § 163.031(9) does not require a school district to use the FIFO method of accounting to determine compliance with that section, nor does it contemplate that the district must utilize a system whereby it traces specific funds received from the state to disbursements for teachers' salaries. Instead, the legislature has directed in § 165.011.1 that funds from various sources for use in paying teachers shall be commingled in the teachers' fund account. Section 163.061 also provides that eighty percent of minimum guarantee funds be deposited in said teachers' fund. These requirements, coupled with the very general language in § 163.031(9) about spending at least eighty percent of minimum guarantee funds for teachers' salaries, indicates that the legislature merely established a minimum floor for expenditures for teachers' salaries. That requirement does not necessitate tracing of particular funds

---

4. This trial was held on March 6, 1975, before the end of the 1974–75 school year and final compliance could not be tested. Exhibit 6 projected an expenditure of $5,248,204.02 for teachers' salaries for the year. It also projected $2,358,138 as the amount of minimum guarantee funds to be placed in the teachers' account and the sum of $2,241,671.52 to be expended from local tax receipts for teachers' salaries.

 

from receipt to disbursement. Compliance is determined at the close of the fiscal year. Compliance as determined by the State Department of Education met the requirements of § 163.031(9).

Judgment reversed.

MORGAN, C. J., BARDGETT, DONNELLY, RENDLEN and SEILER, JJ., and SIMEONE, Special Judge, concur.