**DEAN OPERATIONS, INC.,**
**Plaintiff-Respondent,**

v.

**PINK HILL ASSOCIATES, et al.,**
**Defendants-Appellants.**

**No. WD 34856.**

Missouri Court of Appeals,
Western District.

Oct. 2, 1984.

Robert E. Gould, Gould & Moore, P.C., Kansas City, for defendants-appellants.

David M. Rhodus, Morris, Larson, King, Stamper & Bold, Kansas City, for plaintiff-respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

BERREY, Judge.

Pink Hill Associates appeal from a final judgment of the Circuit Court of Jackson County ordering specific performance of an option to buy real estate. Judgment is affirmed.

On June 17, 1970, Seventy and Seven Industrial Park Company (now Dean Operations, Inc., respondent herein) entered into a Real Estate Exchange Contract with Thomas R. Willard and Ila W. Willard. The Willards were then the owners of twenty-seven acres of land located in Eastern Jackson County, Missouri. As part of a comprehensive development plan, Dean Operations wished to acquire the Willard's property in order to construct a dam and create a lake.

The contract provided that the Willards would exchange their acreage for three waterfront lots when the lake plans had been finalized and the construction of the lake had begun. In the event that construction of the lake had not begun within ten years from the date of the contract, the contract was to become null and void.

On January 28, 1976, Dean Operations paid $500.00 consideration for an amendment to the Real Estate Exchange Contract. The amendment reads in part:

1. The following sentence in said real estate exchange contract is hereby specifically deleted, "In the event the lake construction is not started within 10 years from the date hereof, this contract shall become null and void, but the cash consideration paid herefor shall not be refunded," and the following sentence is hereby substituted, *"In the event the lake construction is not started by June 17, 1980, or in the event the party of the second part does not exercise its option to purchase by June 17, 1980, as hereinafter provided for, this contract as amended shall become null and void,"* but the cash consideration paid herefor shall not be refunded.

2. In addition to the terms and conditions set forth in said real estate exchange contract, except those herein above specifically deleted, *the party of the second part shall have the option until June 17, 1980, of purchasing the following described real estate* from the parties of the first part. . . . (Emphasis added.)

The amendment continued in describing the real estate and setting out the terms and conditions of the option. Dean Operations was required to give notice by registered mail of its decision to exercise the option. The option purchase price was set at $2,000.00 per acre. It is important to note that no work toward the construction of the dam was performed after the amendment was signed.

On June 1, 1977, the Willards conveyed the same twenty-seven acres to their children by a Missouri Warranty Deed express-

ly subject to the interest of Dean Operations. On October 26, 1978, James Polsinelli, then acting attorney for the Willard children, wrote to Dean Operations requesting that it exercise its option to purchase or, in the alternative, acknowledge absence of any claim to the property. Dean Operations responded by letter, pointing out the original contract, the amendment, and its intention to abide by the contractual terms. Specifically, the letter said:

> The company has a valid option until June 17, 1980, to purchase this property at two thousand dollars ($2,000.00) per acre. Our intent is to abide by the contractual terms of the documents as written and of course, we will take whatever steps deemed appropriate to protect our legal interests in this property.

On January 26, 1979, the Willard children conveyed the same property to the partnership of Pink Hill Associates which was formed the same day. The partnership consisted of Milcher, Inc., Daniel P. Bray, Joseph Moore, and James A. Polsinelli, former attorney for the Willard children. Again, conveyance was by Missouri Warranty Deed which expressly subjected the conveyance to the agreement between Thomas R. Willard, Ila W. Willard and Dean Operations.

On March 28, 1980, Polsinelli wrote Dean Operations concerning their respective claims to the property. Polsinelli asserted that the option was not valid without specifying reasons in support thereof. Dean Operations responded by letter restating the validity of the option and also its intention to exercise the option.

On June 12, 1980, Dean Operations notified Mr. and Mrs. Willard that it was exercising its option to purchase the property pursuant to the original contract as amended. Polsinelli, on October 2, 1980, informed Dean Operations that Pink Hill would not convey the property and that tendering the purchase price was unnecessary.

Dean Operations filed suit in February, 1981, seeking enforcement of its rights under the Real Estate Exchange Contract and amendment. The trial court ordered specific performance of the option contract. It is from this order that Pink Hill appeals.

■ This court is limited to the standard of review set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The decision of the lower court may not be disturbed unless it is not supported by substantial evidence, is clearly against the weight of the evidence, erroneously declares the law or erroneously applies the law.

Pink Hill Associates, allege two points of error on appeal. First, the evidence shows the option to be void by its own terms and therefore the order is not supported by substantial evidence and it is contrary to the weight of the evidence. Second, and alternatively, Pink Hill alleges that the evidence shows the option to be vague and self-contradictory and therefore the court erroneously applied the law in ordering specific performance.

Appellants first argue that the option is void by its own terms. They reason the contract clearly and unequivocally provides that the option shall be void if the lake construction is not begun by June 17, 1980, *or* if it is not exercised by June 17, 1980. Thus, the agreement provides for two occurrences which can render it void, i.e., failure to start construction of the lake *or* failure to exercise the option. It is undisputed that Dean Operations, respondent, has not yet begun construction of the lake project and has no plans to do so at this time.

Appellants cite *Webster's New Collegiate Dictionary*, p. 800, (rev. ed. 1980), as their authority for the correct usage of the word "or." They claim that "or" is used to indicate an alternative and the trial court, by interpreting the word to carry out the intention of the parties, improperly substituted a word.

■ It is widely acknowledged that courts frequently interpret the word "or"

so as to carry out the plain purpose of the contract when the strict grammatical meaning of the word would defeat the purpose or lead to an absurd result. *Hawkins v. Hawkins*, 511 S.W.2d 811, 812 (Mo.1974); *Ex parte Lockhart*, 350 Mo. 1220, 171 S.W.2d 660, 666 (banc 1943); *Garrett v. Damron*, 110 S.W.2d 1112, 1116 (Mo.1937); *Hurley v. Eidson*, 258 S.W.2d 607, 608 (Mo. banc 1953); *Herrick Motor Co. v. Fischer Oldsmobile Co.*, 421 S.W.2d 58, 66 (Mo. App.1967). This practice is proper when it "is necessary to effectuate the intent of the parties as garthered from the four corners of the instrument." *Herrick, supra.*

■ The trial court found that the contract and amendment, when read as a whole, was clear on its face and that the plain and unambigious meaning of the document permits Dean Operations to exercise its option regardless of the progress of the lake construction.

In support of the trial court's finding, clause two of the amendment sets out the terms and conditions of the option to purchase. It reads, in part, "the party of the second part *shall* have the option until June 17, 1980, of purchasing the following described real estate from the parties of the first part...." There is no reference to the option being contingent upon progress of the lake construction in this second clause.

Furthermore, it is absurd to believe that respondent would pay $500.00 consideration for an amendment which made it more difficult to acquire the property.

Appellants have attempted to isolate one clause of a multipage contract in order to render the entire contract void. This clause, when read in the context of the entire agreement and amendment, certainly does not compel the result appellants assert.

The trial court's finding that the option was valid is supported by the evidence. Point I is denied.

■ Second, appellants allege the evidence shows the option to be vague and self-contradictory and therefore the order of specific performance was not proper. They cite cases in support of their point which state that to justify specific performance, the contract must be definite, certain and complete. *Three-O-Three Investments, Inc. v. Moffitt*, 622 S.W.2d 736 (Mo. App.1981), *Biggs v. Moll*, 463 S.W.2d 881 (Mo.1971). Appellants contend that the trial court used extrinsic evidence to determine the intent of the parties and effectually rewrote the contract accordingly.

However, the trial court found the contract and amendment, standing alone, to be plain and unambiguous in meaning. Specifically, the court found, "[t]hat although the court permitted certain extrinsic evidence to be received into evidence reserving its ruling upon objections made thereto, it is this court's finding that said agreement ... when read in its entirety and in conjunction with [the amendment to said agreement] is not ambiguous on its face...."

*Wilkinson v. Vaughn*, 419 S.W.2d 1, 6 (Mo.1967) citing *Ray v. Wooster*, 270 S.W.2d 743, 752 (Mo.1954), sets forth the essential provisions which must be contained in a contract before it can be specifically enforced. The essential provisions are (1) the parties, (2) the subject matter, (3) the promises upon both sides, (4) the price, and (5) consideration. The evidence shows all of the above elements were present and the trial court found the contract, as amended, to be clear and complete. Specific performance was not an improper remedy.

■ Appellants also assert, within this point, that the court was compelled to deny specific performance because the after-acquired rights of third parties are equitable considerations and the court should not enforce a contract to harm the innocent parties. Appellants attempt to define "innocent" as merely "those who act in ignorance of *or in reliance on the contract in question* ...." *Beaufort Transfer Co. v.*

*Fischer Trucking Co.,* 451 S.W.2d 40, 45 (Mo.1970). (Emphasis in appellant's brief). They claim to have relied on the "clear and unequivocable language which they believed would render it void by its own terms."

Appellants fail to cite that portion of the clause in *Beaufort* which is most pertinent to this case. The *Beaufort* opinion continues "and that those, with knowledge, who act in utter disregard of it are in no position to assert the rights under equitable principle." *Beaufort, supra,* at 45.

Appellants had actual knowledge that Dean Operations claimed a superior right to the property in question. Polsinelli requested Dean Operations to either act upon its option or disclaim its interest while he was representing the Willard children. That the interest in the land was subject to the interest of Dean Operations was clearly included in the Warranty Deed to the Willard children and in the Deed to Pink Hill. Appellants cannot now claim to be innocent under the *Beaufort* mandate. The trial court did not err in not considering the equities concerned with "innocent" third parties.

Pink Hill took a calculated risk in acquiring the property. They realized the worst that could happen is they would be paid the option price by Dean Operations. They were well aware of Dean Operations' interpretation of the contract. Point II is denied.

Judgment affirmed.

All concur.