**TRI–LAKES NEWSPAPERS, INC.,**
**Plaintiff-Respondent,**

v.

**John LOGAN, Defendant-Appellant.**

No. 14184.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 4, 1986.

Gary W. Allman, Branson, for plaintiff-respondent.

Donald W. Ingrum, Branson, for defendant-appellant.

GARY A. FENNER, Special Judge.

This case arises out of a dispute over a Sub-Lease Agreement and its amendment. Tri-Lakes Newspapers, Inc., hereinafter referred to as Tri-Lakes, as Lessor, entered into a sub-lease with appellant, John Logan, hereinafter referred to as Logan, in relation to certain real estate located at 116–½ South Commercial Street in Branson, Missouri. The sub-lease was entered into on June 15, 1979, and ran from that date to June 15, 1989. On February 19, 1981, Tri-Lakes, owner of the Branson, Missouri newspaper and Logan entered into an amendment to the original sub-lease. The term of the sub-lease was not changed, but a new paragraph 2 was substituted for the original paragraph 2 and an additional paragraph 2.5 was added. The language of the new paragraphs was as follows:

2. The Lessee shall pay as rent the sum of Two Hundred Dollars ($200.00) per month for the full term of the lease. The parties agree that all rent has been paid to date and that the next rental payment is due February 5, 1981, with successive month's rent to be paid on the 5th day of each month thereafter. Logan (sic Lessee) shall be allowed credit against the rent payment for amounts paid to the individual, or her successor, presently performing duties for Lessor and Lessee at 116 ½ S. Commercial, up to a maximum of $200.00 per month."

2.5. It shall be the duty of Lessee to provide office space and part-time labor for the Lessor at 116 ½ S. Commercial at its pick-up point as it presently exists.

Lessor shall pay $145.00 per month toward the payment of that person's salary, directly to Lessee. Lessor and Lessee shall be responsible between themselves to share equally in any raises in salary for said employee after January 1, 1981, but Lessor shall not be responsible for any increase in such salary (including employee's contribution to social security) which exceeds the rate of increase of the consumer price index with January, 1981 as a base period. In addition, Lessor shall pay Lessee $25.00 per month until February 28, 1983, as rental on equipment for the part-time employer (sic employee) furnished by Lessee.

A disagreement arose between the parties as to the interpretation and meaning of the new paragraphs 2 and 2.5 and Tri-Lakes filed a petition for declaratory judgment. In effect, the disagreement was whether or not in addition to Logan being required to pay Tri-Lakes $200.00 per month rent and Tri-Lakes being required to allow Logan to have the use and enjoyment of the leased premises, was Tri-Lakes (1) required to pay for office space, part-time labor and equipment regardless of their use of these services for the full term of the lease, or (2) did the lease merely establish the offsets and payments required by Tri-Lakes to the extent these services were utilized during the term of the underlying sub-lease.

After the amendment to the original sub-lease was entered into on February 19, 1981, Tri-Lakes allowed Logan a credit against his rent of $200.00 per month for salary paid to an individual performing joint services for the parties. In addition, Tri-Lakes paid Logan the sum of $145.00 per month for office space and part-time labor. Tri-Lakes also paid Logan $25.00 per month as rental on equipment used by the part-time employee until February 28, 1983. The payment on equipment related to equipment that the parties jointly acquired on a lease-purchase plan. The lease-purchase plan was fully paid by the parties on February 28, 1983.

The dispute arises from the fact that on or about December 15, 1983, Tri-Lakes paid Logan one-half month's rent and removed its possessions from the premises. The differences between the parties thereafter resulted in Tri-Lakes filing suit seeking a declaratory judgment as to the rights and duties of the parties under the sub-lease agreement as amended. The trial court in its findings and judgment ruled in favor of Tri-Lakes. The trial court held that Tri-Lakes was allowed to discontinue using the office space and part-time labor provided by Logan, and thereafter was not required to allow Logan a $200.00 per month credit against his rent and not required to pay Logan the additional $145.00 per month for office space and part-time labor.

On appeal Logan contends that the trial court erred. Logan contends the trial court incorrectly determined the intent of the parties to the sub-lease and amended sub-lease in light of the documents themselves and other evidence presented.

To gain a perspective on the intent of the parties one must consider the circumstances leading up to and surrounding the execution of the sub-lease and its amendments. Tri-Lakes had assumed a contractual obligation from a previous owner of the newspaper to continually maintain a downtown Branson facility. The actual physical location of the Branson newspaper was moved from downtown Branson and the sub-lease agreement dated June 15, 1979, was entered into whereby Tri-Lakes leased the entire building previously occupied by the Branson newspaper to Logan. This sub-lease of June 15, 1979, generally required Logan to pay rent in the amount of $200.00 per month to Tri-Lakes. The record reflects that apparently there was a side oral agreement between Tri-Lakes and Logan, wherein Tri-Lakes waived the receipt of the monthly rental in exchange for Logan permitting Tri-Lakes to maintain a pickup point at the building and share the services of a secretary. This procedure continued until Logan desired to give the secretary an increase in pay and requested Tri-Lakes to participate in the secretary's raise. Tri-Lakes declined but Logan pointed out that

Tri-Lakes did not have any signed document that granted it a downtown Branson location. In effect, the entire building had been leased to Logan, and if Tri-Lakes desired a downtown location, the lease would have to be re-written. As a result of the discussions between the parties the amendment to the sub-lease was entered into on February 19, 1981. The parties operated under the terms of the sub-lease and its amendment without disagreement until December of 1983 when Tri-Lakes purchased another downtown Branson location. At this time, Tri-Lakes considered that it no longer had a need for the facility referred to in the sub-lease and amended sub-lease. Consequently, on December 15, 1983, Tri-Lakes paid Logan one-half month's rent and removed its possessions from the premises.

It is the finding of this court that the language in the new paragraphs 2 and 2.5 in the amended sub-lease lacks clarity to the extent that it is reasonably susceptible of different constructions.

■ Several rules of construction are applicable to this case. The cardinal rule permeating the entire field of construction is that the court ascertain the intention of the parties and then give effect to that intent unless it conflicts with some positive rule of law. *Caniglia v. Nigro Corporation*, 441 S.W.2d 703, 712 (Mo.1969). In addition, to aid in construing ambiguous contracts, courts may consider the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the practical construction the parties themselves have placed on the contract, by their acts and deeds, and other external circumstances which cast light on the intent of the parties. *Rouggly v. Whitman*, 592 S.W.2d 516, 520 (Mo.App.1979).

■ First of all, in considering the language of the contract, there is indication of an intention of flexibility as to the application of the terms of the agreement. The last sentence of paragraph 2 of the amended sub-lease provides that:

"Logan (sic Lessee) shall be allowed credit against the rent payment for amounts paid to the individual, or her successor, presently performing duties for Lessor and Lessee at 116 ½ S. Commercial, up to a maximum of $200.00 per month."

An intention of flexibility is evidenced in that up to a maximum credit of $200.00 per month was to be allowed. This language implies, when considered with all of the evidence in this case, that if no duties are performed no credit need be given.

When construing ambiguous contracts, even though the courts may consider various items and follow various rules of construction, the construction the parties themselves place on the contract is of considerable significance. *Robson v. United Pacific Insurance Company*, 391 S.W.2d 855 (Mo.1965); *Modine Manufacturing Company v. Carlock*, 510 S.W.2d 462, 468 (Mo.1974). Although the intent of the parties as it existed at the time of execution may be difficult to ascertain, it can be inferred from their acts and words preceding, attending and subsequent to the execution of the instrument. *Keith v. Keith*, 599 S.W.2d 214, 217, 218 (Mo.App.1980). The Supreme Court of Missouri has also spoken to that issue in the case of *Leggett v. Missouri State Life Insurance Company*, 342 S.W.2d 833, 852 (Mo.banc 1960), wherein it held that the construction put on a contract by the parties thereto in the course of its performance, as evidenced by their actions, is an aid to the court in determining the meaning of an ambiguous contract. However, the actions of the parties are not conclusive, except where one party construes the contract in a manner against their interests.

The conduct of the parties in this case sheds light on their intent. Logan's actions around December of 1983 were adverse to his present position and indicate an acceptance by him of Tri-Lakes' interpretation of the contract. Logan was aware sometime in advance that Tri-Lakes intended to discontinue use of the premises and part-time labor and he voiced no objection.

When Tri-Lakes did discontinue use of the premises, Logan accepted one-half month's rent from Tri-Lakes and again made no objection. Furthermore, a few weeks after Tri-Lakes discontinued use of the premises and part-time labor, the parties met and discussed the office equipment which they had jointly acquired. As a result of this meeting, the parties agreed that Logan would keep the office equipment and pay Tri-Lakes $150.00 for one-half of the value of the office equipment at that time. This conduct further evidences that the parties intended their agreement to be flexible to the extent that Tri-Lakes would only be obligated to pay and allow credit for the services that it utilized.

Another rule of construction followed by the courts in ascertaining the intention of the parties is to look for a reasonable and natural construction of their agreement. *Caniglia v. Nigro Corporation*, supra. An interpretation of a contract or agreement which evolves unreasonable results, when a probable and reasonable construction can be adopted, will be rejected. *Empire Gas Corp. v. Small's LP Gas Company*, 637 S.W.2d 239, 247 (Mo.App.1982); *Standard Meat Company v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592, 596 (Mo.App.1979). Applying this rule of construction to the case at hand, Logan would have the sub-lease interpreted in such a manner as to have Tri-Lakes pay Logan the sum of $145.00 per month for the benefit of having Logan lease an office building from Tri-Lakes. In effect, the Lessor would be paying the Lessee rent of $145.00 per month. Such interpretation of this sub-lease agreement would be unreasonable. Tri-Lakes and Logan should not be presumed to have agreed to a lease which would conflict with reason, fairness and common sense. The trial court so found, as evidenced by its special findings of fact.

The trial court correctly applied these rules of construction and held as follows:

1. From and after December 15, 1983, pursuant to the terms of their agreements, Tri-Lakes was not obligated to allow Logan

a credit up to a maximum of $200.00 per month against rental payments due by Logan and Tri-Lakes was not obligated to pay to Logan the sum of $145.00 per month as and for office space and part-time labor.

2. From and after December 15, 1983, pursuant to the terms of their agreements, Logan was obligated to pay Tri-Lakes back rent from December 15, 1983, in the amount of $200.00 per month with the sum of $100.00 having been due on December 15, 1983, and $200.00 per month thereafter for the balance of the term of the sublease, together with interest thereon from and after the due date of each rental payment, at the rate of 9% per annum until paid.

Judgment is affirmed.

PREWITT, C.J., MAUS and CROW, JJ., and FRANK CONLEY, Special Judge, concur.