J. Bradley TEETS, Respondent,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant.

No. ED 90356.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 9, 2008.

Michael R. Harris, George L. Lenard, Chesterfield, for Appellant.

Denise Bloch and Rose Ann Feldman, St. Louis, for Respondent.

KURT S. ODENWALD, Presiding Judge.

### Introduction

American Family Life Insurance Company and American Standard Insurance Company of Wisconsin (collectively referred to as American Family) appeal the trial court's judgment entered by the Circuit Court of the City of St. Louis, following a jury verdict in favor of terminated insurance agent, J. Bradley Teets (Teets), on Teets's claim for breach of contract. We affirm.

### Procedural History/Background

Teets began working as an insurance agent for American Family in Jackson, Missouri in 1982. On January 1, 1993, Teets signed an American Family Agent Agreement (the Agreement), which governed his agency until July 17, 2003, when American Family terminated the Agreement.

The Agreement set forth the obligations of both Teets, as the insurance agent, and American Family. The Agreement provided that Teets was not an employee of American Family, but was an independent contractor.

Specifically at issue in this litigation are the termination provisions contained in Paragraph 6, Section (h) of the Agreement. Section (h), Part 1 outlines the general termination provision as follows:

h. 1) Except as provided in paragraph 2) below, this agreement may be terminated by either party with or without cause by giving written notice to the other and shall be deemed terminated as of the date specified in that notice. If both parties give notice, the earlier ter-

mination date shall control. This agreement shall automatically terminate upon your death or upon the date your license to act as an agent for [American Family] is suspended, revoked or canceled.

Section (h), Part 2 sets forth an exception to Part 1:

2) After two years from the effective date of this agreement or after the termination date of your Agent Advance Compensation Plan, whichever is later, [American Family] will give you notice in writing of any undesirable performance which could cause termination of this agreement if not corrected. [American Family] will not terminate this agreement for those reasons for a period of six months after that written notice. In no case shall notice of undesirable performance be required prior to termination if the performance in question involves a violation of Sect. 4.i. or any other dishonest, disloyal or unlawful conduct; nor shall any notice be required in the event that [American Family] terminates substantially all agreements of this type throughout [American Family] or in a particular state or area.[1]

During a period of time leading up to September 2000, a number of complaints were made to American Family and Teets's District Manager, Richard Friend (Friend), by Teets's customers regarding his customer service and the handling of claims. Friend spoke with Teets regarding these issues as they arose. In September 2000, Friend specifically spoke with Teets regarding several customer issues that were brought to his attention.

After discussing the situation with American Family's Missouri East Sales Director, Gary Flynn (Flynn), Friend sent a formal "notice of undesirable performance" letter to Teets on December 20, 2000. The letter outlined Teets's customer services issues and specifically stated:

This letter is a six month notice of your undesirable performance per your Agency Agreement, Section 6 h.2. Your performance will be monitored monthly and reviewed with you upon conclusion of this period commencing January 1, 2001 to June 30, 2001. Your failure to provide proper service will result in my recommendation to terminate your Agency Agreement.

It is my sincere hope that you take the necessary steps to rectify the above problem.

American Family presented evidence at trial that even after the December 2000 letter, customer complaints regarding Teets's service continued. Teets presented his own evidence of satisfied customers, statistics of his growing business, and his prosperous insurance agency. On June 24, 2003, Friend wrote to Flynn requesting the termination of Teets's Agreement with American Family. This letter detailed the complaints American Family received throughout the years regarding Teets's customer service. On July 17, 2003, American Family terminated the Agreement with Teets for the reasons stated in the June 24, 2003 letter sent from Friend to Flynn.

Teets brought suit against American Family, Friend, and another American Family agent, Janey Foust (Foust), in the Circuit Court of the City of St. Louis on June 4, 2004. Teets asserted breach of contract against American Family in

1. Section 4.i. states that an agent agrees "[t]o maintain a good reputation in your community and to direct your efforts toward advancing the interests and business of [American Family] to the best of your ability, to refrain from any practices competitive with or prejudice to [American Family] and to abide by and comply with all applicable insurance laws and regulations."

Count I, breach of implied covenant of good faith and fair dealing against American Family in Count II, tortious interference with business relations against Friend and Foust in Count III, and unjust enrichment against American Family, Friend, and Foust in Count IV. On January 10, 2006, the trial court granted the defendants' motion for summary judgment as to Count IV, unjust enrichment. Prior to the start of trial, Teets settled his claims against Foust for an undisclosed sum.

A jury trial was held in June 2007, on Counts I and II against American Family and Count III against Friend. At the conclusion of Teets's case, American Family moved for a directed verdict on Counts I and II, which the trial court denied. Friend moved for a directed verdict on Count III, which the trial court took under submission. At the conclusion of all the evidence, American Family moved for a directed verdict on Count I, which the trial court denied. Teets dismissed Count II against American Family, and the trial court granted Friend's motion for a directed verdict on Count III. The only count remaining for the jury to consider was Count I, Teets's breach of contract claim against American Family.

The jury returned a verdict for Teets, and against American Family, for one million dollars. The trial court entered a judgment on the verdict on June 25, 2007. American Family filed a Motion in the Alternative for Judgment Notwithstanding the Verdict, a New Trial, or Remittitur on July 25, 2007, to which Teets responded on September 5, 2007. The trial court denied American Family's motion on September 18, 2007. This appeal follows.

### Points on Appeal

American Family raises six points of error on appeal. The first two points allege the trial court erred in denying American Family's motions for directed verdict and judgment notwithstanding the verdict, and focus on the termination provisions of the Agreement. First, American Family alleges the trial court erred because Teets did not make a submissible case on his breach of contract claim. American Family contends that the Agreement was terminable at will, and therefore, its termination did not breach the Agreement. Second, American Family argues Teets failed to make a submissible case on his breach of contract claim because American Family gave Teets the required six months of notice of undesirable performance in writing, and thus complied with the Agreement's only prerequisite to termination.

In its third point on appeal, American Family asserts that the trial court erred in denying its motion for a new trial because the record does not contain substantial evidence that American Family terminated the Agreement without cause.

American Family's remaining three points on appeal address the issue of damages, and allege the trial court abused its discretion in denying its motion for remittitur. In its fourth point, American Family alleges the amount of the verdict exceeds fair and reasonable compensation because damages for breach of a notice provision are limited to compensation for earnings during the notice period. Accordingly, Teets was entitled to no more than reasonable compensation for the loss of six months' earnings. In its fifth point, American Family claims the amount of the verdict exceeds fair and reasonable compensation because Teets already received partial satisfaction from settlement with co-defendant Foust, and therefore, Teets was not entitled to the full amount of damages awarded by the jury. In its sixth and final point, American Family asserts the amount of the verdict exceeds fair and

reasonable compensation because Teets did not provide substantial evidence of the amount of damages claimed.

## Discussion

### Points 1 and 2: Denial of Motions for Direct Verdict and Judgment Notwithstanding the Verdict

We consider American Family's first two points on appeal together as each point alleges the trial court erred in denying American Family's motions for directed verdict and judgment notwithstanding the verdict, and both points allege Teets failed to make a submissible claim on his cause of action for breach of contract. Both of American Family's points are premised upon, and rely totally upon, the termination provisions provided by the Agreement.

*Standard of Review*

We review the trial court's denial of a motion for directed verdict and judgment notwithstanding the verdict with the same standard of review. *Hodges v. City of St. Louis,* 217 S.W.3d 278, 279 (Mo. banc 2007). In these cases we "must determine whether the plaintiff made a submissible case." *Id.* at 279–80. A case may be submitted only if "each and every fact essential to liability is predicated upon legal and substantial evidence." *Dhyne v. State Farm Fire and Cas. Co.,* 188 S.W.3d 454, 456 (Mo. banc 2006). "Substantial evidence is evidence that, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide a case." *Ryan v. Maddox,* 112 S.W.3d 476, 480 (Mo.App. W.D.2003). We will "reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion." *Dhyne,* 188 S.W.3d at 457.

A "submissible case" in a breach of contract action, includes the following essential elements: (1) a contract between the plaintiff and the defendant; (2) rights of the plaintiff and obligations of the defendant under the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. *Howe v. ALD Servs., Inc.,* 941 S.W.2d 645, 650 (Mo.App. E.D.1997).

We review "the evidence in the light most favorable to the verdict, giving the prevailing party all reasonable inferences from the verdict and disregarding the unfavorable evidence." *Hodges,* 217 S.W.3d at 280. "A directed verdict is proper if there is not substantial evidence to support one of the elements of a cause of action." *Gulley v. Werth,* 61 S.W.3d 293, 296 (Mo. App. S.D.2001). We review the trial court's conclusions on questions of law *de novo. Hodges,* 217 S.W.3d at 280.

*Analysis*

#### I. Point 1—Agreement Was Not Terminable At Will

In its first point, American Family alleges Teets failed to make a submissible case on his claim for breach of contract because the Agreement was terminable at will, and thus, American Family did not breach the Agreement when it terminated Teets. We disagree. We find sufficient evidence exists in the record to support a finding that Teets made a "submissible case" on his breach of contract claim against American Family because the termination provisions of the Agreement are ambiguous, and thus, the question of contract interpretation is a factual issue that rests with the jury.

The cardinal rule of contract interpretation is "to ascertain the intention of the parties and to give effect to that intention." *Burrus v. HBE Corp.,* 211 S.W.3d 613, 616–17 (Mo.App. E.D.2006). The whole document should be considered

and the "plain, ordinary, and usual meaning of a contract's words are used" in interpreting a contract. *Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517, 522 (Mo.App. W.D.2007).

"Whether a contract is ambiguous is a question of law." *Klonoski v. Cardiovascular Consultants of Cape Girardeau, Inc.*, 171 S.W.3d 70, 72 (Mo.App. E.D.2005). A trial court "must consider the whole instrument and the natural and ordinary meaning of the language" when determining whether a contract is ambiguous. *Id.* at 72–3. A contract is only ambiguous if "the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person." *Id.* at 73. An "ambiguity must appear from the four corners of the contract" and "extrinsic evidence cannot be used to create an ambiguity." *Kelly*, 218 S.W.3d at 522. Whether a contract is ambiguous and the interpretation of the contract itself are issues of law that we review *de novo*. *Id.* However, where an ambiguity is found, the resolution of the ambiguity is a question of fact for the jury to determine using extrinsic evidence. *Klonoski*, 171 S.W.3d at 73; *Boyer v. Sinclair & Rush, Inc.*, 67 S.W.3d 627, 631 (Mo.App. E.D.2002).

### a. Ambiguity

Whether Teets made a submissible case entirely depends upon American Family's rights of termination under the Agreement. If, as American Family suggests, the Agreement is unambiguous and provides for unrestricted rights to terminate, then we must reverse. However, we must affirm if the termination provisions are ambiguous because at that point substantial evidence would exist to find Teets made a submissible case on his breach of contract claim. If the termination provisions are found ambiguous, the interpretation of the contractual provisions would be a matter within the exclusive province of the jury. Whether the Agreement between American Family and Teets was ambiguous in its terms regarding agent termination is the core issue to be addressed.

While evidence was presented at trial regarding the Agreement's interpretation, we do not review that evidence here because we do not consider extrinsic evidence in determining whether an ambiguity exists. *Kelly*, 218 S.W.3d at 522. On the other hand, the jury may use that extrinsic evidence to resolve the ambiguity. *Klonoski*, 171 S.W.3d at 73.

The trial court, during the jury instruction conference, found as a matter of law "that the references to [Section (h), Parts 1 and 2] of the agent agreement are ambiguous and those ambiguous sections of the contract are to be determined by the trier of fact." The trial court also noted that the "determination of the meaning of the contract provision under the facts in this case are a question for the jury" and that, in this case, "there's been sufficient evidence presented by both parties to give this issue to the trier of fact." We agree with the trial court's finding that the Agreement was ambiguous and its submission to the jury for factual findings on the contract's terms.

American Family argues the Agreement's termination provisions unambiguously provide for termination of the Agreement at will. However, the record before us compels our conclusion that the right of American Family to terminate an agent under the Agreement is not as evident as it suggests. We analyze the "plain, ordinary, and usual meaning of a contract's words" to determine their meaning and determine if an ambiguity exists. *See Kel-*

*ly*, 218 S.W.3d at 522. Paragraph 6, Section (g) of the Agreement sets forth the duration of the Agreement as follows: "This agreement shall continue from its effective date until termination as herein provided." Paragraph 6, Section (h), then describes the methods for termination of the Agreement. While Part 1 of Section (h) provides for termination "with or without cause," this section notes that an exception to this general rule is contained in Part 2. Notably, Paragraph 6, Section (h), Part 2 sets forth special termination procedures for a class of agents including those who were under the Agreement for at least two years. In particular, Section (h), Part 2, provides that American Family agrees to give "notice in writing of any undesirable performance which could cause termination of this agreement if not corrected" to that class of agents. In addition to agreeing to give such written notice, American Family agreed to not to terminate the Agreement for the reasons stated in the notice of undesirable performance for six months after the written notice. This notice applied only to undesirable performance, not violations of Section 4.1 or any other dishonest, disloyal, or unlawful acts. As an agent operating under the Agreement for more than two years, Teets claims that any attempt to terminate his Agreement with American Family is governed solely by Part 2 of Section (h).

While American Family argues the termination provisions provide for termination at will, Teets argues that Part 2 of Section (h), Paragraph 6, requires not only written notice, but also provides an opportunity to cure any performance issues.[2] We find both interpretations reasonable, and thus find the termination provisions ambiguous. Although Section (h), Part 2 does not specifically include the term "right to cure," it is reasonable to find that the required notice of undesirable performance is meaningless without extending to the agent a right to cure such performance. The critical language found within Paragraph 6, Section (h), Part 2 that supports this interpretation is the phrase "if not corrected." The fact that the written notice of undesirable performance could cause termination "if not corrected" leads to a reasonable inference that if the undesirable performance is corrected, or "cured," American Family may not terminate the Agreement. Here, American Family provided Teets the required notice of undesirable performance. Six months later, had Teets failed to improve his performance, American Family had the right to terminate his Agreement. However, not only did American Family opt not to terminate Teets's agency at the end of the wait period, but evidence was presented at trial from which the jury could reasonably conclude that Teets corrected, or "cured," his undesirable performance.[3] When American Family sent Teets a letter of

---

**2.** The court in *McClure v. Am. Family Mut. Ins. Co.*, 29 F.Supp.2d 1046, 1067 (D.Minn. 1998), agreed with Teets' interpretation, when it found, when analyzing identical language, that "[t]o properly terminate [the insurance agent], therefore, American Family was required to provide notice of any undesirable performance and afford a six month period in which, presumably, [the insurance agent] could remedy any deficiency, unless the termination was for a practice prejudicial to the company or dishonest, disloyal, or unlawful."

**3.** While American Family presented evidence of one unsatisfied customer during this six-month period, Teets presented evidence that he changed some of his office practices to address customer complaints and communicated with Friend to ensure things were going okay and there were no more complaints. Teets also testified that at the end of the six-month period, he spoke with Friend as to whether he would still be an agent a year from then and Friend told him that he would.

termination in July 2003, almost two and half years had passed since it first notified Teets of his undesirable performance. Teets reasonably argues that any subsequent attempt to terminate the Agreement required a separate written notice of undesirable performance, and a six-month period in which Teets would have the opportunity to remedy the alleged deficiencies, unless the termination was for a practice prejudicial to the company or dishonest, disloyal, or unlawful conduct.

American Family characterizes Teets's argument as a claim for a right to a "second" six-month notice before termination. We view Teets's argument differently. Teets argues that he has a right to cure the deficient performance prior to any termination, and that he cured the complaints of undesirable performance within the six-month period provided by the Agreement. By curing the undesirable performance within the first six-month period of notice given in December 2000, any future claim of undesirable performance would require a separate written six-month notice and opportunity to cure.

We find both Teets's and American Family's interpretations of these provisions reasonable. While the "mere fact that the parties disagree on the subject does not render the document itself ambiguous," we find that the "disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person." *See Klonoski,* 171 S.W.3d at 73. While we note that

both parties have presented reasonable and plausible explanations for their respective constructions of the termination provisions, we do not adopt either as a factual matter on the record before us. That task is ultimately for the jury after hearing all of the relevant evidence. *See id.* Rather, these arguments merely demonstrate the viability of Teets's breach of contract claim and thus establish that he presented a submissible case. *See Burrus,* 211 S.W.3d at 617 n. 3.

American Family also argues the applicability of the phrase "with or without cause" in Paragraph 6, Section (h), Part 1. By clinging to this argument, American Family fails to acknowledge that the phrase "with or without cause" can be reasonably interpreted to apply only to those agents *not under the Agreement for two years*. To find otherwise would nullify the purposes of the exception provided by Part 2, which grants additional protections from termination for special classes of agents, including those with more than two years within the Agreement.

### b. Employment At Will Doctrine

■■■ American Family also argues the Agreement is terminable at will as a matter of law based on Missouri's at-will doctrine. As American Family correctly points out, under the employment-at-will doctrine, "an employment agreement with no fixed duration is deemed to be at-will and either party may, therefore, terminate the employment relationship with or without cause absent a specific contract term to the contrary."[4] *Kelly,* 218 S.W.3d at

---

4. We are aware that here we refer to "employment" when in fact we are dealing with an independent contractor. A number of cases have held the employment-at-will doctrine applicable to situations involving independent contractors. *See Costello v. Shelter Mut. Ins. Co.,* 697 S.W.2d 236, 237 (Mo.App.

E.D.1985); *Kelly,* 218 S.W.3d at 522; *Bishop v. Shelter Mut. Ins. Co.,* 129 S.W.3d 500, 506 (Mo.App. S.D.2004) (The court found "the employment relationship here is not that typically found in at-will cases. The agency contract provided that [the plaintiff] was an independent contractor, but the relationship could

522. However, as with many general rules, there are exceptions. One such exception applies here. "[W]rongful discharge may be actionable if there is a contract and a breach thereof, i.e., a termination that violates a contractual clause relating to the duration of employment or a clause preventing termination only for cause." *Bishop v. Shelter Mut. Ins. Co.*, 129 S.W.3d 500, 503 (Mo.App. S.D.2004). The court in *Kelly* similarly noted that without a fixed duration, an employment agreement is deemed at-will only when "a specific contract term to the contrary" is absent, or when the contract "fails to include provisions related to the reasons for termination." *Kelly*, 218 S.W.3d at 522, 523.

Here, the Agreement between Teets and American Family falls into this exception to the employment-at-will doctrine. The Agreement contains express provisions relating to termination. The Agreement expressly provides that agents under the Agreement for two years are entitled to a six-month period after a notice of undesirable performance is given. After the six-month period, if the undesirable performance is not corrected, the agent then can be terminated for the undesirable performance. For that class of agents, the Agreement arguably does not provide for termination at will, as such agents are specifically protected by this additional clause. As the jury found when resolving the ambiguities of the Agreement, while other infractions such as those under Section 4.i. or those involving dishonesty, disloyalty, or unlawful acts, were not entitled to the six-month notice protection, an agent

threatened with termination for undesirable performance was afforded this additional protection, and accompanying opportunity to cure.

Second, American Family argues the termination provisions are of indefinite duration, and therefore, the Agreement is terminable at will. While we agree the Agreement contains no date marked on a calendar or specific time period that delineates the end of the Agreement, this Court has held that "[t]ime for performance may be specifically determined by external events." *G.H.H. Inv. L.L.C. v. Chesterfield Mgmt.*, 262 S.W.3d 687, 695 (Mo.App. E.D.2008). In *G.H.H. Investments*, the contract at issue provided that the closing on a real estate transaction was to take place 30 days after obtaining plat approval. *Id.* While the seller argued the contract was of indefinite duration and thus terminable at will, the Court found that "[t]he fact that 'it is not possible to put the Closing date on a calendar,' does not mean that the Contract's duration was indefinite." *Id.* Termination of the Agreement here is similar, in that termination is pegged to the notice of undesirable performance.[5] We find sufficient evidence was presented for the jury reasonably to find that after the notice of undesirable performance is given, the Agreement can only be terminated in six months if the performance was not corrected.

Finally, to further support its employment-at-will argument, American Family cites specifically to *Kelly* for the proposition that the Agreement here is also ter-

---

be terminated upon written notice. Such agreements have been characterized as agency contracts 'terminable at will.' In such situations, whether labeled an independent contractor or employee, the relationship and termination of it is governed by general principles enunciated in the at-will doctrine." (internal citations omitted).)

5. While here termination of the Agreement is pegged to the notice of undesirable performance, in other situations termination can be pegged to "a violation of [Section] 4.i.," "any other dishonest, disloyal or unlawful conduct," or where American Family terminates substantially all of the agreements throughout the company or a particular state.

minable at will as an operation of law, just as the insurance agent agreement in *Kelly* was found to be at-will.[6] 218 S.W.3d at 517. However, *Kelly* is distinguishable in a key respect. Unlike the Agreement between Teets and American Family, the contract in *Kelly* specifically stated that either party had "the right to terminate this Agreement by written notice delivered to the other or mailed to the other's last known address." *Id.* at 521. The Agreement here, on the other hand, specifically provides for procedures before termination.[7] The Agreement does not unambiguously provide for termination at will, as does the contract in *Kelly*.

Reviewing *de novo* the issue of whether the Agreement was ambiguous, we find, after reviewing the record on appeal, that the termination provisions in the Agreement are "reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person," and therefore we find those provisions ambiguous. *See Klonoski*, 171 S.W.3d at 73. Both parties presented reasonable and plausible constructions for the termination provisions, and thus we find an ambiguity in those provisions. The resolution of the ambiguity is a question of fact to be submitted to, and determined by, the trier of fact. The jury judges the weight of the evidence, and where reasonable minds can differ on the facts, we will not disturb the jury's verdict. *Ross v. Prime Transport,*

*Inc.,* 3 S.W.3d 867, 868 (Mo.App. S.D. 1999).

### II. Point 2—Noncompliance with the Notice Requirement

█ In its second point on appeal, American Family argues that Teets failed to make a submissible case on his claim for breach of contract because American Family complied with the Agreement's notice requirement. American Family contends that the only prerequisite to termination of the Agreement was giving Teets a written notice of undesirable performance, followed by continuation of the Agreement without termination for a six-month period. Like its first point on appeal, American Family can succeed on its second point only if the termination provision set forth in Part 2 of Section (h) does not contain a right to cure. American Family alleges that it gave Teets notice on December 20, 2000, and did not terminate him within six months. Therefore, American Family argues the Agreement was not breached.

We understand American Family's position and find that a reasonable argument can be made to support that position. However, as discussed in our review of American Family's first point on appeal, a reasonable argument can also be made that the termination provisions of Paragraph 6, Section (h), Part 2 contained an "opportunity to cure." Because we find that the termination provisions of the Agreement are reasonably susceptible to more than one construction by a reason-

---

**6.** While the plaintiffs in *Kelly* were independent contractors under agency contracts, the court found the relationship could be terminated upon written notice, and that such agreements are characterized as "agency contracts 'terminable at will'." *Kelly*, 218 S.W.3d at 524–25. In these situations, "whether labeled an independent contractor or employee, the relationship and termination of it is governed by general principles enunci-

ated in the at-will doctrine cases." *Bishop*, 129 S.W.3d at 506.

**7.** While we disagree with its eventual holding as to the meaning of the termination provisions, we note that when reviewing an identical American Family agency agreement, the court in *Clifton v. Am. Family Mut. Ins. Co.*, 507 F.3d 1102 (8th Cir.2007), did not find the termination provisions provided for employment-at-will or termination without cause.

able average person, we find the termination provisions are ambiguous and the resolution of the ambiguity should be left to the jury. *See Klonoski*, 171 S.W.3d at 73.

As noted in our examination of American Family's first point, in interpreting a contract we examine the whole document and look at the "plain, ordinary, and usual meaning of a contract's words." *Kelly*, 218 S.W.3d at 522. Although American Family argues the termination provisions are unambiguous and provides for only a six-month notice period prior to termination, it can be reasonably argued that the Agreement required American Family to give Teets written notice of his "undesirable performance which could cause termination of [the] agreement *if not corrected*," and allow Teets six months to correct the performance before American Family could terminate him for those reasons, (emphasis added). While American Family argues that it is required to do no more than give written six months notice prior to termination, upon a reasonable examination of the words of the Agreement, giving meaning to all of the words, we find that American Family's interpretation of the Agreement ignores the phrase "if not corrected." To adopt American Family's position that the Agreement unambiguously requires only one notice of undesirable performance before any termination would render the phrase "if not corrected" meaningless. However, we must "construe each term of a contract to avoid an effect which renders other terms meaningless or illusory." *Parker v. Pulitzer Pub. Co.*, 882 S.W.2d 245, 250 (Mo.App. E.D.1994). We prefer a "construction attributing a reasonable meaning to each phrase and clause, and harmonizing all provisions of the agreement . . . to one that leaves some

of the provisions without function or sense." *State v. Maryville Land P'ship*, 62 S.W.3d 485, 492 (Mo.App. E.D.2001). A logical application of American Family's position would allow American Family to terminate an agency agreement *at any time* following the expiration of the initial six-month period. The letter of undesirable performance and passage of six months would become the trigger event for any decision to terminate an agent, *at any time in the future*. An agent could be terminated summarily by American Family twenty years or more after the initial letter of undesirable performance was sent, regardless of the agent's performance. We are not compelled to interpret the Agreement in such a fashion. Because we find an alternate reasonable interpretation exists to that suggested by American Family, we find the Agreement is ambiguous. Accordingly, the determination of the Agreement's meaning is properly left to the jury.

*Conclusion*

The record supports the trial court's finding that Teets made a submissible case for breach of contract. Teets presented substantial evidence of his claim, including substantial evidence that the Agreement was not terminable at will or without cause. There was substantial evidence that agents are entitled to a right to cure any undesirable performance, and that American Family was not entitled to terminate the Agreement after six months if the undesirable performance was cured. Furthermore, there was substantial evidence from which a jury could find that the undesirable performance, which was the catalyst for the six months notice, was cured. American Family's first two points on appeal are denied.[8]

**8.** While we note American Family's reliance on *Clifton v. Am. Family Mut. Ins. Co.*, 507 F.3d 1102 (8th Cir.2007), we do not find the United States Court of Appeals for the Eighth

### Point 3: Denial of Motion for New Trial

■ In its third point, American Family asserts the trial court erred in denying its motion for a new trial.

#### Standard of Review

We review an order denying a motion for a new trial for abuse of discretion. *In re: H.L.L.*, 179 S.W.3d 894, 896 (Mo. banc 2005). An abuse of discretion occurs when the trial court's "ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 896–97. This Court "will reverse the trial court's decision only where we find a substantial or glaring injustice." *Gallagher v. DaimlerChrysler*, 238 S.W.3d 157, 162 (Mo.App. E.D.2007).

#### Analysis

American Family argues that, should this Court find that cause is a prerequisite to termination, the trial record does not contain substantial evidence from which a jury could reasonably find that American Family terminated Teets without cause. American Family asserts the record presented sufficient incidents of poor customer service to compel a jury finding that Teets's termination was for cause. We disagree.

Teets presented substantial evidence at trial from which the jury could conclude that he cured the deficient performance complained of by American Family in the December 2000 letter. While American Family presented evidence of some dissatisfied customers and some legitimate complaints, Teets countered this evidence with his own evidence showing customer satisfaction. Teets also produced evidence showing the growth of his agency business following his receipt of the notice of unde-

sirable performance, and the growing financial success of his insurance agency. We do not minimize the nature of the complaints made against Teets, and agree that the evidence of complaints raised some questions about Teets's performance. However, we find that sufficient evidence of Teets's performance after his receipt of the letter of undesirable performance was presented to the jury for its factual determination, and not a factual determination by this Court. We find Teets presented substantial evidence to support the jury's finding of breach of contract. Point denied.

### Points 4, 5, and 6: Denial of Motion for Remittitur

In its fourth, fifth, and sixth points on appeal, American Family argues the trial court abused its discretion in refusing to enter a remittitur of the jury's verdict.

#### Standard of Review

■ "The assessment of damages is primarily a function for the jury." *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 180 (Mo.App. W.D.2006). However, a trial court has the discretion to enter a remittitur order if, "after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages." Section 537.068.

We review the trial court's decision not to order remittitur solely for an "abuse of discretion." *Scott*, 215 S.W.3d at 181. An abuse of discretion occurs when "a verdict is so excessive as to shock the conscience of the appellate court" and convinces the court that "both the jury and the trial court abused their discretion." *Id.; Willman v. Wall*, 13 S.W.3d 694, 699 (Mo.App.

Circuit's argument persuasive, nor do we find ourselves bound by this decision.

W.D.2000). When determining whether a verdict is excessive, we review "the evidence in the light most favorable to the verdict" and disregard all unfavorable evidence. *Scott*, 215 S.W.3d at 181; *McCormack v. Capital Elec. Constr. Co., Inc.*, 159 S.W.3d 387, 395 (Mo.App. W.D.2004). An appellate court "should exercise its power to interfere with the judgment of the jury and trial court with hesitation and only when the verdict is manifestly unjust." *McCormack*, 159 S.W.3d at 395.

 There is no precise formula for determining whether a verdict is excessive. *Willman*, 13 S.W.3d at 699. We must consider each case on its own facts and the ultimate test is what fairly and reasonably compensates the plaintiff for the damages sustained. *Scott*, 215 S.W.3d at 181; *Willman*, 13 S.W.3d at 699.

*I. Point 4—Damages Should Not be Limited to Six Months of Lost Earnings*

 American Family argues in its fourth point that Teets's damages should have been limited to no more than reasonable compensation for loss of six months' earnings. We disagree.

American Family's argument is premised upon an assumption that the termination provisions in the Agreement do not provide for an opportunity to cure undesirable performance after a six-month notice was given. As we discussed in our analysis of American Family's first two points on appeal, a jury reasonably could conclude that insurance agents, such as Teets, were entitled a right to cure the undesirable performance within the six-month period, thereby cutting off American Family's right to terminate the Agreement. If an agent is permitted to continue to perform as an agent beyond the six month notice period upon curing the undesirable performance, then we cannot assume Teets would have continued as an agent for only

six months. In fact, the record demonstrates that on the only occasion Teets was given a six-month notice of undesirable performance, he was not terminated after the tolling of the six-month period, but instead continued as an agent under the Agreement for an additional two years. In light of our previous findings with regard to the ambiguity of the termination provisions of the Agreement and the evidence presented to the jury, we find the trial court did not err in allowing Teets to recover damages beyond six months' earnings. Point denied.

*II. Point 5—No Reduction from Foust Settlement*

 In its fifth point on appeal, American Family asserts it was entitled to a reduction of the damages awarded by the jury because Teets already received partial compensation for his damages from a settlement with Foust. While American Family is correct in that a "plaintiff is entitled to only one satisfaction for the same wrong," this rule applies to multiple recoveries for a single claim. *Walihan v. St. Louis–Clayton Orthopedic Group, Inc.*, 849 S.W.2d 177, 180 (Mo.App. E.D.1993).

In this case, Teets filed suit against Foust on claims of tortious interference with business relations (Count III) and unjust enrichment (Count IV). Those claims were settled prior to trial and Foust was dismissed from the suit. The only claim heard by the jury, and for which damages was determined, was Teets's claim for breach of contract against American Family (Count I), a claim separate and distinct from the claims raised in Counts III and IV. The settlement with Foust on Counts III and IV had no bearing on the jury's award for breach of contract in Count I. An offset is permissible only if the claim against Foust is the same against American Family. *Id.* American Family presents no evidence or law indi-

cating otherwise. Point five is therefore denied.

III. *Point 6—Award Fair and Reasonable Compensation*

 In its sixth and final point on appeal, American Family alleges Teets did not provide substantial evidence of the amount of damages claimed and thus the amount of the jury's verdict exceeds "fair and reasonable compensation." We disagree.

As with American Family's fourth and fifth points, we review a trial court's denial of a motion for remittitur for abuse of discretion when determining whether the jury's verdict exceeds "fair and reasonable compensation." *Lavin v. Carroll,* 871 S.W.2d 465, 467 (Mo.App. E.D.1994). We will interfere only when the verdict "is so grossly excessive that it shocks the conscience" of the court and "convinces the court that both the jury and the trial court abused their discretion." *Willman,* 13 S.W.3d at 699.

We do not find the verdict here "so grossly excessive as to shock the conscience." Instead we find substantial evidence to support the jury's verdict. Teets's damage expert testified that he calculated Teets's damages two ways, arriving at totals of either $1,570,000 or $1,685,000 in damages. The jury only awarded Teets $1,000,000 in damages, substantially less than the damages testified to by Teets's expert. We cannot say that the jury award was so grossly excessive as to shock the conscience or that the jury and the trial court abused their discretion. We do not believe the verdict exceeded fair and reasonable compensation.

Remittitur here was not appropriate. The trial court did not abuse its discretion in denying American Family's motion for remittitur. Points four, five, and six are denied.

*Conclusion*

The judgment of the trial court is affirmed.

GLENN A. NORTON, J., and PATRICIA L. COHEN, J., concur.