In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3704

BONNIE L. ROTH and CONNIE S. ROTH,

*Plaintiffs-Appellants,*

*v.*

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 3867—**Ronald A. Guzmán**, *Judge.*

ARGUED MAY 6, 2009—DECIDED JUNE 5, 2009

Before EASTERBROOK, *Chief Judge*, and POSNER and WOOD,
*Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiffs were insurance
agents of the American Family insurance companies
(which we'll refer to as the "company"). The company
terminated their agency agreement, precipitating this
diversity suit for breach of contract, governed by Illinois
law. The district court granted summary judgment in
favor of the company.

The agency agreement provided that it could be terminated by either party upon written notice, except that after the agreement had been in effect for two years "the Company will give you notice in writing of any undesirable performance which could cause termination of this agreement if not corrected. The Company will not terminate this agreement for those reasons for a period of six months after that written notice." But notice is not required if the agent engaged in any "dishonest, disloyal or unlawful" conduct or "practices competitive with or prejudicial to the Company." If no such ground for termination is established, and the agent's performance is not "undesirable," the company still may terminate his agency without notice, but only if it "terminates substantially all agreements of this type throughout the Company or in a particular state or area."

One of the plaintiffs signed the name of the applicant on an application for an insurance policy. The other signed the name of another insurance agent (on a different policy), thereby certifying that the other agent had given the insured required information and had seen him read and sign the contract. One of the plaintiffs argues that she was selling securities, not insurance contracts, and so was governed by a different agency agreement. But the contracts were "variable universal life" insurance policies. They are both securities and insurance contracts, 215 ILCS § 5/500-35(a)(2); Elizabeth F. Browne, "The Tyranny of the Multitude Is a Multiplied Tyranny: Is the United States Financial Regulatory Structure Undermining U.S. Competitiveness?," 2 *Brooklyn J. Corp. Financial & Commercial Law* 369, 377 (2008), and were covered by the agency agreement.

The only other question presented by the appeal is whether, as the district judge held, the plaintiffs' signing other persons' names on insurance applications was "dishonest" conduct within the meaning of the agency agreement even though there is no suggestion that either plaintiff derived a financial benefit from what she did. If it was not dishonest conduct, the insurance company violated the agency agreement by terminating the plaintiffs without notice.

They were authorized to sign by the owners of the names and indeed in one instance were requested by the owner to sign for him. But they did not indicate, as by writing "by Bonnie Roth" after the signature, that they were signing another person's name.

Their conduct disserved the insurance company. The insured whose name was signed by Connie Roth might have refused to pay her insurance premiums on the ground that her name had been forged, and the insured whose application was witnessed by an agent whose name Bonnie Roth signed might have tried to use the irregularity to invalidate his insurance contract. The plaintiffs' performance of their agency duties was therefore "undesirable." But was it "dishonest"?

It is odd that such a large insurance company (American Family is number 352 on Fortune's list of the 500 largest American corporations, http://money.cnn.com/magazines/ fortune/fortune500/2008/full_list/301_400.html, visited May 18, 2009), should have such a poorly drafted contract with its agents. (The contract keeps landing the company in court. See, e.g., *Clifton v. American Family Mutual Ins. Co.*,

507 F.3d 1102 (8th Cir. 2007); *Teets v. American Family Mutual Ins. Co.*, 272 S.W.3d 455 (Mo. App. 2008); *McClure v. American Family Mutual Ins. Co.*, 29 F. Supp. 2d 1046 (D. Minn. 1998).) It is unclear whether after the agent has been on board for two years the company can terminate the agency for purely economic reasons, even with notice, unless it terminates similar agreements with other agents. (The Ninth Circuit, in an unpublished opinion, held that it can, *Adams v. American Family Mutual Ins. Co.*, 1999 WL 386913, at *3 (9th Cir. May 21, 1999), but over a dissent.) Whether the agent is entitled to an opportunity to cure "undesirable performance" is not spelled out either, but has been left to be inferred from the phrase "if not corrected." *Teets v. American Family Mutual Ins. Co., supra*, 272 S.W.3d at 463-64; *McClure v. American Family Mutual Ins. Co., supra*, 29 F. Supp. 2d at 1067; cf. *Filmline (Cross-Country) Productions, Inc. v. United Artists Corp.*, 865 F.2d 513, 517 (2d Cir. 1989). No deadline for cure is specified. And one might have expected the requirement of notice and of an opportunity to cure to be intended for agents whose performance was inadequate or unsatisfactory, rather than "undesirable," which has a hint of turpitude that blurs the difference between "undesirable" and "dishonest" performance. The difference is further blurred by the inclusion in the grounds for termination without notice of any practices "prejudicial to" the insurance company. One would think that "undesirable performance" was such a practice, yet such an interpretation would make the requirement of six months' notice evaporate.

The clumsy drafting that has given rise to this case is the use of the word "dishonest" to designate the situations

in which six months' notice is not required. In the employment context the word has a primary connotation of theft or fraud. See, e.g., Kathryn J. Filsinger, *Employment Law for Business and Human Resources Professionals* 259 (2005); Charles H. Fleischer, *Employer's Rights: Your Legal Handbook from Hiring to Termination and Everything in Between* 285 (2004); Shawn Smith & Rebecca Mazin, *The HR Answer Book: An Indispensable Guide for Managers and Human Resources Professionals* 184 (2004). To call an agent who disobeys his principal's directive (as the plaintiffs did, for the company's employee manual makes clear that signatures on applications for insurance must be authentic) "dishonest" if the agent had no pecuniary stake sounds a little strange. But only a little; for among the other meanings of "dishonesty," two clusters describe the plaintiffs' behavior: (1) "a breach of trust, a 'lack of . . . probity or integrity in principle,' 'lack of fairness,' or a 'disposition to . . . betray,'" and (2) "deceitful behavior, a 'disposition to defraud [or] deceive,' or a 'disposition to lie, cheat, or defraud.'" *United States v. Brackeen*, 969 F.2d 827, 829 (9th Cir. 1992) (citations omitted); see also *Midway School District v. Griffeath*, 172 P.2d 857, 860 (Cal. 1946); R. Bruce McAfee & Paul J. Champagne, *Effectively Managing Troublesome Employees* 74-75 (1994); P.J. Fitzgerald, *Criminal Law and Punishment* 37 (1962).

We think the best interpretation is that the six months' notice is required if the agent's performance is unsatisfactory, for example because he is slow or makes many mistakes, but is not required if he engages in what could reasonably be thought misconduct. And it is misconduct to sign another person's name to an insurance application

without indication that it is not the applicant's signature. It is deceptive, since it is not the kind of deviation from instructions that a supervisor would catch, and it could get the company into trouble. It was also an unforced error, because the manual clearly forbade such conduct and because the plaintiffs could have asked their supervisors for authorization to vary from the manual and did not do so.

Suppose the plaintiffs had added after the signatures "by Bonnie Roth" or "by Connie Roth," as the case might be. That would have been contrary to the instructions in the agents' manual, but it would not (we may assume without deciding) have been dishonest, because it would not have been deceptive. Compare that with *Scirex Corp. v. Federal Ins. Co.*, 313 F.3d 841, 848 (3d Cir. 2002), where nurses employed by the plaintiff "understood that they were to record their observations of test subjects every thirty minutes for eight hours, yet in many cases their records included 'observations' for times when the patients were sitting at home. Even worse, these fictionalized records falsely implied that the patients had remained in the clinic for the full eight hours, and therefore that the tests had proceeded according to protocol. Thus, not only did the nurses fictionalize the records, they made it virtually impossible to discover the fictionalization until disclosure by the informant. Faced with such flagrant misrepresentation in a field characterized by strict adherence to procedure, we conclude that the nurses' conduct was clearly dishonest, as well as highly unfaithful." Ditto here.

AFFIRMED.